IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


SCOTT GARRETT, *et al.,*

       Plaintiffs,

                                            Case No. 10-CV-71 BB/ACT

       v.

TRENCHLESS INFRASTRUCTURE
TECHNOLOGIES, *et al.,*

       Defendants.

## MEMORANDUM OPINION

Removed on January 27, 2010, this matter comes before the Court on three related motions: a motion to remand and award attorneys' fees filed by Wells Fargo Bank N.A., Wells Fargo & Co., and Charles Ewing (collectively "Wells Fargo") (Doc. 7); a motion to remand filed by Scott Garrett, Pamela Garrett, Trustees of the Scott Garrett and Pamela Garrett Family Trust, Garrett Capital, L.L.C. (collectively "Garrett") and Catherine Davis, Kenneth Hunt, and Hunt & Davis, P.C. (collectively "Hunt & Davis") (Doc. 11); and a motion for attorneys fees and costs filed by Garrett and Hunt & Davis (Doc. 18).

For the reasons set forth below, the motions to remand (Docs. 7 and 11) are GRANTED, while the motion for fees and costs (Doc. 18) is GRANTED IN PART. Though the granting of remand will send this matter back to state court, this Court retains jurisdiction pending an award of fees and costs under 28 U.S.C. § 1447 (c).[1]

---

[1] District courts are empowered to retain jurisdiction over remanded matters in order to award fees and costs. *See In re C and M Properties, L.L.C.* 563 F.3d 1156, 1162 n. 2 (10th Cir. 2009) (distinguishing post-remand fee awards under § 1447 (c) from improper retention of jurisdiction); *see also, e.g., Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 365 (7th Cir. 2000);

**Factual and Procedural Background**

This litigation has a long and tortured history. Initiated almost seven years ago, this matter has seen the addition and subtraction of claims, parties, suits, and complaints. It has included bankruptcy proceedings and federal-court abstention, has been the subject of an appeal to the New Mexico Court of Appeals, has spawned a request for extraordinary writs to the New Mexico Supreme Court, and, in its relatively brief stay in this Court, has included eight motions. And yet even this laundry list of procedural gambits gives the impression that the suit has progressed, though in a herky-jerky fashion, along a complex but coherent path. It has not. This matter's unorthodox posture is almost wholly attributable to the efforts of *pro se* litigant Daniel Cook. Mr. Cook's filings have moved the suit hither and yon—from court to court, judge to judge—forcing the parties and the courts to untangle novel, largely unsupported arguments and procedural machinations.

Rather than fell a not insignificant portion of wilderness in papering an exposition of the suit's history—which the parties are painfully familiar with—this Court provides the following overview of the pertinent filings, omitting irrelevant chapters in the litigation and extraneous detail. This case began in state court where, in November 2003, Garrett sued, *inter alia,* Mr. Cook and a company that Mr. Cook was an officer and director of, Hydroscope Group Inc.[2] The Complaint was later amended to assert a claim against Wells Fargo, who, in turn, filed cross-

---

*Stallworth v. Greater Cleveland Reg'l Trans. Auth.*, 105 F.3d 252, 255-57 (6th Cir. 1997); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1258-59 (3d Cir. 1996); *Moore v. Permanente Med. Group*, 981 F.2d 443, 445 (9th Cir. 1992); *Coward v. A C and S, Inc.*, 91 Fed.Appx. 919, 921-22 (5th Cir. 1/14/04) (unpublished).

[2] The company was previously known as Trenchless Infrastructure Technologies, Inc.

claims against, *inter alia*, Hydroscope.  Mr. Cook responded in November 2005 by initiating a new suit in the Second Judicial District of New Mexico in which he alleged claims against Wells Fargo.  Garrett eventually followed by filing a Second Amended Complaint in March 2006.  The cases were consolidated and, in February 2009, Wells Fargo received summary judgment on all claims against it.

In August 2009, Mr. Cook took the unusual step of filing an additional, though apparently not superceding, complaint in the consolidated state-court case—again asserting claims against, *inter alia*, Wells Fargo.  In response, Wells Fargo asked the court to enjoin Mr. Cook from making additional filings without either obtaining counsel or receiving leave.  Finding that Mr. Cook "ha[d] engaged in a pattern of litigation activity that is abusive and vexatious," the state court granted Wells Fargo's injunction.  Wells Fargo, *inter alia*, then moved to dismiss Mr. Cook's August 2009 complaint.  A hearing was scheduled for January 28, 2010.  One day before the hearing, Mr. Cook removed the litigation to federal court.[3]

Mr. Cook's removal asserts that federal subject matter jurisdiction exists under "42 U.S.C. §§[]1981, 1982, 1985 (3) & 2000(a)" and under "28 U.S.C. §§[] 1331, 1334(a), 1343(a)(3), 1367, 1443(1)."

## Discussion

First, it should be noted that Mr. Cook's procedural machinations have created a Gordian knot for the Court and parties to untangle.  Though *pro se* litigants are given significant leeway in their filings—lest courts elevate form over substance—they cannot hide behind their *pro se* status

---

[3]In removing, Mr. Cook filed both a notice of removal and an "alternative complaint." Though Mr. Cook eventually withdrew the "alternative complaint" he waited until after the opposing parties had incurred the expense of drafting and filing motions.

while burdening the Court and parties with reams of vexatious, unfounded arguments. In short, Mr. Cook's *pro se* status does not allow him to flout the courts' procedural rules or ignore the substance of the law.[4]

There are several unorthodox aspects of Mr. Cook's removal. Among the most glaring is the large amount of time that elapsed between the filing of the suit and Mr. Cook's notice of removal. Thus, the Court begins by determining whether Mr. Cook's removal complied with 28 U.S.C. § 1446 (b), which requires a notice of removal to be filed within thirty days "after the receipt by the defendant of a copy of an original or amended pleading from which it may be first ascertained that the case is removable."[5]

Mr. Cook's notice fails to indicate which pleading his removal is based on. This Court, having reviewed the state-court pleadings, has sought to consider the most likely bases. In spite of these efforts—and with all appropriate deference to Mr. Cook's *pro se* status—it is obvious that Mr. Cook's removal is untimely. The notice of removal was filed on January 27, 2010. That date is 2,259 days after Garrett's initial complaint started the litigation, 1,965 days after Garrett's amended complaint, and 1,402 days after Garrett's second amended complaint.[6] Though he

---

[4] *See, e.g., Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994); *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir. 1992); *Whitney v. New Mexico*, 113 F.3d 1170,1173-74 (10th Cir. 1997).

[5] This Court finds no authority for the proposition, advanced by Mr. Cook, that the requirements of § 1446 (b) do not apply to § 1443 removals. *But see Neal v. Wilson*, 112 F.3d 351, 355 (8th Cir. 1997) (recognizing that removals pursuant to 28 U.S.C. § 1443 are subject to thirty-day time limit of 28 U.S.C. § 1446 (b)). Thus, in spite of the wide variety of purported federal bases that he alleges, Mr. Cook must have complied with the timing requirements of § 1446 in removing this matter to federal court.

[6] Mr. Cook asserts that his removal was timely because it took place before service of Garrett's Third Amended Complaint. The record does not indicate that a Third Amended

cannot remove his own complaint(s)[7], it is worth noting that Mr. Cook's removal is also 1,521 days after he filed his first complaint and 169 days after he filed his second. Finally, the removal was attempted 343 days after the state court's Order dismissing Wells Fargo—which Mr. Cook claims "den[ied him] a white male his fundamental liberty rights to due process, a fair hearing and a right to protect property interests"—and 105 days after the state court enjoined Mr. Cook from more filings. *See* Notice of Removal at pg. 18 (Doc. 4).

Regardless of which pleading Mr. Cook sought to rely on, his removal was too late. Indeed, the question is not close as both the facts and law demonstrate that Mr. Cook lacked any colorable basis for removing in the first place. In such situations, the district court is empowered to award costs and expenses, including attorneys' fees, to the wrongfully removed litigants. *See* 28 U.S.C. § 1447 (c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

"[T]he standard for awarding fees should turn on the reasonableness of the removal."[8] There is no presumption to award fees or not to award them.[9] "Absent unusual circumstances, courts may award attorney's fees under § 1447 (c) only where the removing party lacked an

---

Complaint has been filed—or even that one exists. In any case, § 1446 (1) requires a litigant to wait until after the filing of the pleading on which the removal is predicated.

[7] *See, e.g., Goodman v. Silverier,* 374 F.Supp.2d 991, 992-993 (D.N.M. 2005).

[8] *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).

[9] *Id.* at 709-11.

objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."[10]

Here, Mr. Cook lacked any reasonable basis for removal.  Outside of the highly dubious jurisdictional grounds for his removal, which this Court neither addresses nor relies on, Mr. Cook's removal was objectively unreasonable.  Nothing that occurred in the thirty days prior to removal could have given Mr. Cook a reasonable belief that the suit had become removable. Indeed, it appears from the record that Mr. Cook's removal had far less to do with obtaining federal jurisdiction than it did with avoiding state-court jurisdiction—specifically the state court's injunction and the impending hearing on the motion to dismiss.  Where, as here, a litigant's decision to remove comes years late and appears to have been spurred by a desire to avoid an adverse state-court ruling, no objectively reasonable grounds for removal exists. Accordingly, in such cases, the awarding of fees will likely be warranted.

Mr. Cook's actions expose an unfortunate reality: When a litigant—even, or perhaps especially, a *pro se* litigant—"engage[s] in a pattern of litigation activity that is abusive and vexatious," he exacts significant time and resources from opposing parties, who feel compelled to respond to each baseless allegation in protecting their rights.  In many cases, defendants find it less expensive to settle such cases than to respond to a determined litigant's sustained abuse. Courts bear a responsibility in protecting against such vexatious tactics.  To that end, they may, *inter alia*, enjoin additional filings, impose sanctions, or require the payment of opposing parties' expenses.   Were Mr. Cook to remain in federal court and continue his current antics, he would

---

[10] *Id.* at 711.

likely see all three. As it is, Mr. Cook must be remanded to state court. Because his removal lacked an objectively reasonable basis, Mr. Cook must reimburse Wells Fargo, Mr. Garrett, and Hunt & Davis[11] for the fees and costs they incurred in responding to it.

### Conclusion

Accordingly, this matter is remanded. Mr. Cook will be ordered to pay opposing parties' removal-related attorneys' fees and costs in accordance with § 1447 (c). Wells Fargo, Garrett, and Hunt & Davis are instructed to submit statements, bills, and totals detailing those expenses.[12] This Court retains jurisdiction pending the award of such fees and costs.

Dated: August 11, 2010

                                         _____
                                         **BRUCE D. BLACK**
                                         **UNITED STATES DISTRICT JUDGE**

---

[11] Because it is not certain that Hunt & Davis has incurred any independent, recompensable expenses, this Court does not presently consider what measure, if any, may be recovered for a law firm's self-representation. This issue will be addressed, if necessary, after the Court has reviewed the parties' cost submissions.

[12] The Court has received statements and affidavit testimony regarding some of the fees and costs incurred in seeking remand. The Court now asks for up-to-date information regarding remand expenses including, for example, the parties' April 2010 expenditures.